UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DHALMA C.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

21-CV-00111-LJV
DECISION & ORDER

_____

On January 21, 2021, the plaintiff, Dhalma C. ("Dhalma"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.* On December 21, 2021, Dhalma moved for judgment on the pleadings, Docket Item 7; on May 19, 2022, the Commissioner responded and cross-

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Dhalma applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

moved for judgment on the pleadings, Docket Item 8; and on July 1, 2022, Dhalma replied, Docket Item 9.

For the reasons that follow, this Court grants Dhalma's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443,

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); see McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson, 817 F.2d at 986.

## DISCUSSION

### I. THE ALJ'S DECISION

On April 27, 2020, the ALJ found that Dhalma had not been under a disability since her alleged disability onset date of July 1, 2014. See Docket Item 6 at 16-28. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a), 416.920(a). See id.

At step one, the ALJ found that Dhalma met the insured status requirements of the Act through June 30, 2016, and had not engaged in substantial gainful activity since July 1, 2014. Id. at 19. At step two, the ALJ found that Dhalma suffered from the severe, medically determinable impairment of "degenerative disc disease of the cervical and lumbar spines." Id. The ALJ found that Dhalma's mental impairments were non-severe because she was only mildly impaired in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing herself. Id. at 21-22.

At step three, the ALJ found that Dhalma's severe, medically determinable impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 19-23. More specifically, the ALJ found that Dhalma's physical impairment did not meet or medically equal listing 1.04 (disorders of the spine). *Id.*

The ALJ then found that Dhalma had the RFC[4] to perform the full range of light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), with no additional limitations. *See id.* at 23-26. At step four, the ALJ found that Dhalma could perform past relevant work as a hair stylist, ending the five-step analysis. *Id.* at 26-27; *see Dictionary of Occupational Titles* 332.271-018, 1991 WL 672808 (Jan. 1, 2016). Therefore, the ALJ found that Dhalma had not been under a disability, or entitled to SSI or DIB, since her alleged disability onset date of July 1, 2014. *See* Docket Item 6 at 27-28.

## II.   ALLEGATIONS

Dhalma argues that the ALJ erred in two ways. *See* Docket Item 7-1 at 13-18. First, she argues that the ALJ erred by finding her psychiatric impairments non-severe at step two. *Id.* at 13. Second, she argues that the ALJ erred by failing to account for clinical evidence that rendered stale the opinion of a consultative examiner Nikita Dave,

---

[4] A claimant's residual functional capacity ("RFC") is the most she "can still do despite [her] limitations . . . in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

4

M.D.  *See id.* at 17.  This Court agrees that the ALJ erred and, because that error was to Dhalma's prejudice, remands the matter to the Commissioner.

### III. ANALYSIS

Dhalma argues that the ALJ's step two determination was unsupported by substantial evidence.  *See id.* at 13.  More specifically, she says that her psychiatric impairments cause more than minimal limitations in her mental work-related functioning.  *See id.*  The Court agrees that the ALJ erred at step two.  And while a step-two error may be harmless if the ALJ adequately addresses both severe and non-severe impairments in the RFC determination, *see Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013), that is not what happened here.

At step two of the disability determination, the ALJ considers whether a claimant's medically determinable impairments are severe.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.*  For mental impairments, the ALJ must assess the claimant's degree of limitation in four areas of mental work-related functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00E.  If the ALJ determines that a claimant's mental impairments cause no more than a mild limitation in all four areas of mental work-related functioning, then the claimant's mental impairments are generally non-severe.  *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Here, the ALJ acknowledged Dhalma's mental health impairments.  *See* Docket Item 6 at 19 ("In addition to physical impairments, [Dhalma] also alleged disability due to mental health concerns, including a bipolar disorder, depression, and 'hyper anger syndrome,' as well as insomnia.").  The ALJ determined, however, that Dhalma's mental impairments did not cause more than a mild impairment in any of the four areas of mental work-related functioning.  *See id.* at 21-22.  The ALJ based his conclusion largely on the opinion of a consultative examiner, Susan Santarpia, Ph.D.  *See id.*

Dr. Santarpia examined Dhalma on May 24, 2018.  *See id.* at 342-45.  She opined that Dhalma had a mild impairment in regulating emotions, controlling behavior, and maintaining well-being, caused by a "lack of motivation."  *Id.* at 344.  Dr. Santarpia concluded that the results of her evaluation "appear[ed] to be consistent with psychiatric and substance abuse problems" but that Dhalma's issues did not "appear to be significant enough to interfere with [Dhalma's] ability to function on a daily basis."  *Id.* at 345.

Dr. Santarpia noted that Dhalma reported her current legal status as "unremarkable."  *See id.* at 343.  But less than a year after Dhalma saw Dr. Santarpia, Dhalma's legal status was indeed remarkable—and in a way that directly implicated her mental health.  More specifically, on February 12, 2019, Dhalma presented to the comprehensive psychiatric emergency program at Erie County Medical Center "on 9.41 papers."  *See id.* at 689-90.  Section 9.41 of the New York Mental Hygiene Law allows a law enforcement officer to "take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others" and "remove him or her to . . . [a] comprehensive psychiatric

emergency program."  N.Y. Mental Hyg. Law § 9.41 (1989).  So less than a year after Dr. Santarpia concluded that Dhalma had only mild mental health issues, a law enforcement officer found that she was so mentally ill that she needed to be hospitalized involuntarily.

The ALJ knew about Dhalma's section 9.41 hospital admission in 2019, *see* Docket Item 6 at 20, but he "made no attempt to 'reconcile' or 'grapple with'" it, *see Estrella*, 925 F.3d at 97 (quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)).  If the ALJ was not going to grapple with Dhalma's section 9.41 status himself, at the very least he should have recontacted Dr. Santarpia and given her the opportunity to address Dhalma's 2019 behavior.  *See Seals v. Comm'r of Soc. Sec.*, 2019 WL 4743653, at *7 (W.D.N.Y. Sept. 30, 2019) ("In light of [the plaintiff's recent] medical records, remand is appropriate to obtain an updated psychiatric medical source opinion"); *see also Maxwell H. v. Comm'r of Soc. Sec.*, 2020 WL 1187610, at *8 (N.D.N.Y. Mar. 12, 2020) ("Of course, 'the Court takes no position at this time as to whether any [updated medical source statement] ought to change the ultimate determination of disability[,]' but, at the very least, 'consideration' of such an opinion is 'require[d].'" (alterations in original) (quoting *Courtney v. Comm'r of Soc. Sec.*, 2019 WL 2281226, at *3 (W.D.N.Y. May 29, 2019))).

And that is especially so given Dhalma's past mental health issues, also evidenced by her legal history.  For example, in 2009, Dhalma served time for burning down her ex-boyfriend's house while he was still inside.[5]  Docket Item 6 at 298; *see id.*

---

[5] The Court recognizes that Dhalma's 2009 behavior predates her alleged disability onset date of July 1, 2014.  *See* Docket Item 6 at 16.  But Dhalma's behavior in 2009 still is relevant as to whether she has one or more severe, medically

at 327-28 ("Dhalma does have a history of physical fighting with [significant others]. Dhalma was arrested and spent [time] in jail in 2009 after setting a house on fire when her [significant other] was still in the house."). And a service note from Horizon Health Services on February 3, 2015, stated that Dhalma's previous arrests were too numerous to count. *Id.* at 298. So while Dr. Santarpia may have correctly noted that Dhalma's "current legal status" was "unremarkable" at the time of her visit, *id.* at 343, that most certainly was not the case both before and after that visit.

The Second Circuit has cautioned that ALJs should be wary about relying too heavily on the opinion of a consultative examiner "in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019). But that appears to be exactly what the ALJ did here. And without further explanation, the Court is not assured that the ALJ's determination at step two—and an RFC that includes no mental health limitations whatsoever—is supported by substantial evidence. *See Cichocki v. Astrue*, 792 F.3d 172, 177 (2d Cir. 2013) ("Where [courts] are 'unable to fathom the ALJ's rationale in relation to the evidence in the record,' . . . [courts] will not 'hesitate to remand for further findings or a clearer explanation for the decision.'" (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982))).

Additionally, the Court finds that the ALJ did not adequately address Dhalma's ability to handle stress. Dhalma's mental health providers noted that she "appears to

---

determinable mental impairments. *Cf.* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00C(4)(a) ("We will request longitudinal evidence of your mental disorders when your medical providers have records concerning you and your mental disorder over a period of months *or perhaps years*." (emphasis added)).

8

have difficulty with . . . [her] ability to manage . . . stress." Docket Item 6 at 322; *see, e.g.*, *id*. at 489 ("very reactive to situational stressors"); *id*. at 775 (discharge plan including "recognize situations that increase anxiety"); *id.* at 792 (same); *id.* at 798 (chief complaint of "experience[ing] panic attacks and an increase in symptoms of anxiety"); *id.* at 807 (noting housing and familial stress in addition to "increased bouts with anxiety and depression"); *id.* at 846 ("[Dhalma] reports [a] car accident where she was the driver[,] and her overreactive behavior following the incident create[ed] legal troubles."); *id.* at 848 (noting "increased emotional stress" and practicing "techniques . . . to more effectively deal with some of her stressors"). In fact, the ALJ explicitly noted that Dhalma "exhibited difficulty managing . . . stress," *id*. at 20, and that her "most recent treatment notes in February and March 2020 indicate some ongoing difficulties with coping with psychosocial stressors," *id*. at 21. But the ALJ did not address stress when he explained the RFC, nor did he include any stress-related limitations in the RFC. *See id.* at 23-26.

"Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called "low[-]stress" jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect [her] ability to work." *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. 2006) (quoting SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985)). The ALJ did not do that here. Therefore, and even if Dhalma's stress is the result of a non-severe mental impairment, this Court cannot evaluate whether the RFC adequately accounts for that stress. *See Jolene S. v. Comm'r of Soc. Sec.*, 2022 WL 16631162, at *4 (W.D.N.Y. Nov. 2, 2022) ("An ALJ is

required to specifically analyze a plaintiff's limitations in dealing with stress and how those difficulties may affect her ability to work."); see also *Laura C. v. Comm'r of Soc. Sec.*, 529 F. Supp. 3d 64, 71 (W.D.N.Y. 2021) (finding that meaningful judicial review was precluded when the Court was "left to speculate" about the ALJ's reasoning). And that is another independent reason why remand is required.[6]

## CONCLUSION

The Commissioner's motion for judgment on the pleadings, Docket Item 8, is DENIED, and Dhalma's motion for judgment on the pleadings, Docket Item 7, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     August 23, 2023
           Buffalo, New York

                                             /s/ Lawrence J. Vilardo
                                             LAWRENCE J. VILARDO
                                             UNITED STATES DISTRICT JUDGE

---

[6] The Court "will not reach the remaining issues raised by [Dhalma] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); see *Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103-04 (W.D.N.Y. 2020).